2005 ND 76

**Daryl Jerome MAY, Petitioner
and Appellant**

v.

**David A. SPRYNCZYNATYK, Director,
Department of Transportation,
Respondent and Appellee.**

No. 20040232.

Supreme Court of North Dakota.

April 11, 2005.

Mark A. Friese (argued), and Bruce D. Quick (on brief), Vogel Law Firm, Fargo, ND, for petitioner and appellant.

Douglas B. Anderson, Assistant Attorney General, Bismarck, ND, for respondent and appellee.

MARING, Justice.

[¶ 1] Daryl May has appealed from a district court judgment affirming a hearing officer's decision to suspend May's driver's license for two years. We affirm, concluding that the failure of the Department of Transportation ("the Department") to file a transcript of the administrative hearing within twenty days did not require summary reversal of the hearing officer's decision and that May failed to raise a proper objection to admission of the Intoxilyzer test results.

## I

[¶ 2] In the early morning hours of March 6, 2004, a Fargo police officer noticed May's vehicle being driven in an erratic manner. Upon stopping the vehicle, the officer noticed that May's eyes were watery and there was a strong odor of alcoholic beverages. May failed field sobriety tests and was arrested for driving under the influence. He was taken to the Cass County Jail, where an Intoxilyzer test showed a blood alcohol concentration of .19 percent.

[¶ 3] May requested an administrative hearing, which was held on March 31, 2004. The hearing officer determined the stop of May's vehicle was justified and the Intoxilyzer test had been fairly administered in accordance with the State Toxicologist's approved method. The hearing officer ordered that May's license be suspended for two years. May appealed to the district court, which affirmed the decision of the hearing officer.

## II

[¶ 4] Judicial review of a decision to suspend a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Larsen v. North Dakota Dep't of Transp.*, 2005 ND 51, ¶ 4, 693 N.W.2d 39; *Kiecker v. North Dakota Dep't of Transp.*, 2005 ND 23, ¶ 7, 691 N.W.2d 266. Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On an appeal from a district court's ruling on an administrative appeal, this Court reviews the agency order in the same manner. N.D.C.C. § 28-32-49; *Larsen*, at ¶ 4; *Ringsaker v. Workforce Safety & Ins. Fund*, 2005 ND 44, ¶ 9, 693 N.W.2d 14.

[¶ 5] This Court exercises a limited review in appeals involving driver's license suspensions and revocations. *Aamodt v. North Dakota Dep't of Transp.*, 2004 ND 134, ¶ 12, 682 N.W.2d 308; *Wetsch v. North Dakota Dep't of Transp.*, 2004 ND 93, ¶ 10, 679 N.W.2d 282. We review the decision of the administrative agency, not the decision of the district court, and our review is limited to the record compiled before the agency. *Kiecker*, 2005 ND 23, ¶ 8, 691 N.W.2d 266; *Wetsch*, at ¶ 9. In reviewing an administrative agency's factual findings, we do not substitute our judgment for that of the agency or make independent findings of fact, but defer to the hearing officer's opportunity to judge the credibility of the witnesses. *Kiecker*, at ¶ 8; *Aamodt*, at ¶ 12. We determine only whether a reasoning mind reasonably could have determined that the factual findings were proved by the weight of the evidence from the entire record. *Kiecker*, at ¶ 8; *Aamodt*, at ¶ 12. Questions of law are fully reviewable on appeal. *Kiecker*, at ¶ 8.

## III

[¶ 6] May contends that summary reversal of his license suspension is mandated because the Department failed to file a transcript of the administrative proceedings within twenty days of receipt of his notice of appeal.

[¶ 7] Section 39-20-06, N.D.C.C., governs judicial review of a decision to suspend, revoke, or deny a driver's license, and requires the driver to serve and file a notice of appeal and specifications of error within seven days after the date of the hearing. The statute further provides:

> Within twenty days after receipt of the notice of appeal, the director or the hearing officer who rendered the decision shall file in the office of the clerk of court to which the appeal is taken a certified transcript of the testimony and all other proceedings.

[¶ 8] May's administrative hearing was held on March 31, 2004. May's notice of appeal and specifications of error were mailed to the Department on April 5, 2004, and filed with the district court on April 6, 2004. The Department mailed the transcript of the administrative hearing on April 29, 2004, and it was filed in the office of the clerk of district court on April 30, 2004. May argues that, even allowing three days for service by mail under N.D.R.Civ.P. 6(e)(1), the Department was required to file the transcript with the district court by April 28, 2004. The De-

partment does not dispute that the transcript was filed a few days late.

## A

[¶ 9]   May contends that the Department's failure to strictly comply with the requirements of N.D.C.C. § 39–20–06 automatically mandates summary reversal of the decision suspending his license.   The Department argues that timely filing of the transcript is not jurisdictional, and reversal is appropriate only if May shows he was prejudiced by the filing of the transcript a few days late.   Resolution of this issue requires consideration of this Court's decisions in *Rudolph v. North Dakota Dep't of Transp. Dir.*, 539 N.W.2d 63 (N.D. 1995), and *Dettler v. Sprynczynatyk*, 2004 ND 54, 676 N.W.2d 799.

[¶ 10]   In *Rudolph*, the Department filed the transcript within twenty days as required by N.D.C.C. § 39–20–06.   Nearly two months later the parties discovered that four pages had been omitted from the transcript.   The Department supplemented the transcript with the omitted pages, and the district court granted Rudolph's motion for a fifteen-day extension to the briefing schedule to allow him to address the new material.

[¶ 11]   On appeal to this Court, Rudolph argued the untimely filing of the complete transcript was jurisdictional and mandated reversal of the decision suspending his license.   The Department argued the twenty-day requirement is not jurisdictional and Rudolph had "suffered no prejudice from the slight delay caused by the 'clerical' error."   *Rudolph*, 539 N.W.2d at 66.   This Court agreed with the Department, concluding that the twenty-day requirement was not jurisdictional and that the appropriate remedy for a failure to file a complete transcript of the administrative hearing is a remand until the transcript is

provided, not dismissal of the action.   *Id.* at 67.

[¶ 12]   In *Dettler*, this Court addressed a driver's failure to serve and file sufficiently particular specifications of error as required by N.D.C.C. § 39–20–06.   Dettler had timely filed specifications of error, but the Department argued the specifications were not particular enough to identify the unlawful seizure and procedural issues Dettler attempted to raise on appeal.   We concluded that Dettler's specifications of error were not particular enough to adequately preserve those issues for appeal, making it unnecessary to address those issues on the merits.   *Dettler*, 2004 ND 54, ¶¶ 17, 21, 676 N.W.2d 799.

[¶ 13]   May argues that *Dettler* requires strict compliance with all provisions of N.D.C.C. § 39–20–06, and failure of the Department to comply with any of the statute's requirements automatically mandates summary reversal of the decision suspending his license.   He further argues that the holding in *Rudolph* is inapplicable because this Court's subsequent decision in *Dettler* now requires strict compliance with all provisions of N.D.C.C. § 39–20–06, including the requirement that the Department file the transcript of the hearing within twenty days.

[¶ 14]   May has misread our holding in *Dettler*.   We did not say that summary reversal was required if a party failed to strictly comply with all of the requirements in N.D.C.C. § 39–20–06.   In *Dettler* we held only that we would decline to address on appeal issues and arguments which had not been adequately identified in the specifications of error.   The result in *Dettler* is analogous to the rule that issues which have not been adequately preserved below will be considered waived and will not be addressed on appeal.   *See, e.g., State v. Lee*, 2004 ND 176, ¶¶ 9–10, 687 N.W.2d 237; *State v. Causer*, 2004 ND

75, ¶ 16, 678 N.W.2d 552. May's suggestion that *Dettler* requires summary reversal for failure to strictly comply with N.D.C.C. § 39-20-06 is also inconsistent with the fact that we went on in *Dettler* to address other issues which *had* been adequately identified in the specifications of error. *See Dettler*, 2004 ND 54, ¶¶ 22-24, 676 N.W.2d 799.

[¶ 15] We conclude that *Dettler* does not require automatic summary dismissal of a decision suspending a driver's license when the Department fails to file the transcript within the twenty-day period. Under *Rudolph*, the twenty-day filing period is not jurisdictional. Because May has failed to allege or prove prejudice caused by the two-day delay in filing the transcript, we conclude the Department's failure to file the transcript within twenty days does not mandate reversal of the decision suspending May's license.[1]

B

[¶ 16] May argues that, even if he was not prejudiced by the Department's delay in filing the transcript, reversal may still be warranted if the Department's conduct constituted a systemic disregard of the law. May contends the district court should have granted his request to conduct discovery to determine whether the Department was systematically failing to comply with the twenty-day deadline under N.D.C.C. § 39-20-06.

[¶ 17] When a governmental agency systemically disregards the requirements of the law, a court may reverse a decision in favor of the government to prophylactically ensure that the government acts consistently and predictably in accordance with the law. *Kouba v. State*,

2004 ND 186, ¶ 14, 687 N.W.2d 466; *Kraft v. State Bd. of Nursing*, 2001 ND 131, ¶ 48, 631 N.W.2d 572; *Greenwood v. Moore*, 545 N.W.2d 790, 793 (N.D.1996). To establish systemic disregard, a party must demonstrate some persistent pattern of improper agency conduct, and more than a single miscue by the government is required to evidence institutional noncompliance which amounts to systemic disregard of the law. *Kraft*, at ¶ 48; *Greenwood*, at 793. Reversal for conduct which is merely potentially prejudicial, without a showing of actual prejudice, may be warranted as a sanction for institutional noncompliance and systemic disregard of the law if the conduct is commonplace. *City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 29, 658 N.W.2d 731.

[¶ 18] The record in this case does not establish a persistent pattern of improper conduct by the Department, but merely a single violation. May argues, however, that the district court erred in denying his request to conduct discovery to seek evidence of additional instances where the Department failed to timely file the transcript of the administrative hearing. In support of his request, May averred in his brief that he was aware of one other instance where the Department had failed to file a transcript within twenty days of the hearing.

[¶ 19] Discovery decisions are addressed to the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. *Fast v. Mayer*, 2005 ND 37, ¶ 14, 692 N.W.2d 138; *Dixon v. McKenzie County Grazing Ass'n*, 2004 ND 40, ¶ 35, 675 N.W.2d 414. A court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscion-

---

1. May has not sought any lesser sanction for the Department's failure to comply with

N.D.C.C. § 39-20-06.

able manner, or when its decision is not the product of a rational mental process. *Fast*, at ¶ 14. Under the circumstances presented in this case, we conclude the district court did not abuse its discretion in denying May's request for leave to conduct discovery.

### IV

[¶ 20] May contends the hearing officer erred in admitting into evidence the Intoxilyzer test results. May claims there was a lack of foundation for admission of the test results because the Department failed to establish the chemical test was fairly administered. May bases his claim of lack of foundation on his assertions that there was a facial irregularity on the printed test record and that the Department failed to establish compliance with the State Toxicologist's approved method because it did not show the standard solution was less than 45 days old and had been used fewer than 50 times.

### A

[¶ 21] During administration of the Intoxilyzer test, the certified chemical test operator types in information on an attached keyboard. The Intoxilyzer will at times prompt the operator for a response. In response to one of these prompts, the operator in this case apparently typed "N" rather than "Y" when asked whether the standard solution test had been performed. The printed Intoxilyzer test report shows that the operator responded "N" to this prompt. May now argues there was insufficient foundation to admit the test results because of this facial irregularity.

[¶ 22] The Department argues that May failed to properly object to admission of this evidence and therefore waived any objection he had to its admission. When the printed Intoxilyzer test results, denominated Exhibit 1C, and several other docu-

ments were offered into evidence, the hearing officer asked May's counsel if there were any objections. May's counsel replied:

> I objection [sic] to 1A, B, C second page of 1C. No objection to 1D, which apparently consists of two pages. Object to Exhibit 1E, and I'll lay the foundation for those objections through cross-examination. No objection to Exhibit 3, 4, 6, 7, 8, 10. I object to Exhibit 12 on relevance.

A few moments later, during cross-examination of the arresting officer, May's counsel questioned whether a certification page for one of the exhibits was a photocopy and whether the signature was made with a stamp rather than an original signature. May's counsel then stated:

> I will reserve my objections. I will have certification objections. I don't think that they're going to be this dispositive, if I can address them in closing?

[¶ 23] May's counsel did not make a specific objection to lack of foundation for admission of the Intoxilyzer test result. Nor did May's counsel, during cross-examination of any of the witnesses, ask about the "N" appearing on the Intoxilyzer test results. Counsel waited until the parties had rested and the evidentiary stage of the hearing had been closed before he first raised the issue of the "N" on the Intoxilyzer test result during closing arguments. At that point, counsel argued that the "N" was a facial ambiguity which was contrary to the approved method, and therefore there was no showing of fair administration of the chemical test.

[¶ 24] The admissibility of evidence at an adjudicative hearing before an administrative agency is governed by the North Dakota Rules of Evidence, unless application of the Rules is expressly waived by the hearing officer. N.D.C.C.

§ 28–32–24(1); *Roberts v. North Dakota Dep't of Human Servs.,* 2005 ND 50, ¶ 9, 692 N.W.2d 922; *Madison v. North Dakota Dep't of Transp.,* 503 N.W.2d 243, 246 (N.D.1993). A hearing officer is afforded broad discretion to control the admission of evidence at the hearing, and the decision to admit or exclude evidence will only be reversed on appeal if the hearing officer abused his discretion. *Roberts,* at ¶ 9; *Knudson v. Director, North Dakota Dep't of Transp.,* 530 N.W.2d 313, 316–17 (N.D. 1995).

[¶ 25] Rule 103(a)(1), N.D.R.Ev., requires a party to make a specific objection to proffered evidence:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . .

In applying N.D.R.Ev. 103(a)(1), this Court has cautioned:

> A touchstone for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court, so the trial court could intelligently rule on it. . . . A party must object at the time the alleged error occurs, so the trial court may take appropriate action if possible to remedy any prejudice that may have resulted. Failure to object acts as a waiver of the claim of error.

*State v. Hayek,* 2004 ND 211, ¶ 9, 689 N.W.2d 422 (quoting *State v. Bell,* 2002 ND 130, ¶ 9, 649 N.W.2d 243) (citations omitted); *see also State v. Lee,* 2004 ND 176, ¶¶ 9–10, 687 N.W.2d 237; *State v. Causer,* 2004 ND 75, ¶ 16, 678 N.W.2d 552.

[¶ 26] A party must make a specific objection to evidence at the time it is offered for admission into evidence to give the opposing party an opportunity to argue the objection and attempt to cure the defective foundation, and to give the trial court an opportunity to fully understand the objection and appropriately rule on it. *See Hayek,* at ¶ 10; *Lee,* at ¶ 10; *Western Nat'l Mut. Ins. Co. v. University of North Dakota,* 2002 ND 63, ¶¶ 39–40, 643 N.W.2d 4; *State v. Helgeson,* 303 N.W.2d 342, 346 (N.D.1981); *see also State v. Long,* 98 Hawai'i 348, 48 P.3d 595, 598–600 (2002) (citing numerous cases from other jurisdictions). A general objection of "lack of foundation" is not sufficient to specifically raise issues which are not apparent from the context. N.D.R.Ev. 103(a)(1); *Western Nat'l,* at ¶ 40; *Long,* at 600. As noted in *Long,* at 600, a general "lack of foundation objection" is "insufficient to preserve foundational issues for appeal because such an objection does not advise the trial court of the problems with the foundation." In *Helgeson,* at 346, this Court commented on the requirement in N.D.R.Ev. 103(a)(1) that a party state the specific ground of objection:

> The rule does not state the precise form which objections to evidence should take. However, at a minimum, the objection should give the opponent the basis of what is objectionable and bring the matter to the trial court's attention so that the court can rule on the same. These requirements are not met when counsel merely objects to evidence as being immaterial or prejudicial and does not apprise the court of the constitutional nature of the objection to the evidence.

Accordingly, a party objecting to evidence on the basis of lack of foundation must advise the court and the opposing party precisely what foundation is lacking.

■ [¶ 27] May did not, at the time the Intoxilyzer test results were offered, raise even a general objection of lack of foundation, let alone a specific objection based upon the challenged "N" appearing on the exhibit. Nor did May raise the issue of the operator keying in "N" during cross-examination of the only two witnesses who testified, the arresting officer and the officer who administered the Intoxilyzer test. The only remotely specific objection May raised to the proffered exhibits was a challenge to the certification of the documents. By withholding his argument based upon the "N" on the printed Intoxilyzer test results until closing arguments, May effectively deprived the Department of the opportunity to remedy any alleged defect in foundation for the exhibit.

[¶ 28] May, relying upon *Tabert v. North Dakota Dep't of Transp.*, 1997 ND 39, 560 N.W.2d 883, contends a general objection to admission of the chemical test results is sufficient unless the hearing officer expressly requests further specification of the objection. *Tabert* is clearly distinguishable. The objections raised by Tabert were far more detailed than the ones in this case, specifically referring to foundation, relevancy, and hearsay. By contrast, May did not even indicate he was objecting to foundation. His objection was nothing more than a general objection without stating any specific grounds.

[¶ 29] This Court concluded Tabert's objections were specific enough to preserve those issues and he was not required to elaborate on them when asked by the hearing officer during closing arguments whether "he had anything more specific." *Tabert*, 1997 ND 39, ¶¶ 4–7, 560 N.W.2d 883. The Court did indicate, however, that if the hearing officer had asked Tabert to be more specific before ruling on the objections, Tabert would have had to be

more specific or risk waiving his objections. *Id.* at ¶ 7.

[¶ 30] *Tabert* does not, as May contends, hold that the hearing officer has an affirmative duty to require more specification before ruling on an objection. Rather, *Tabert* merely indicates that a hearing officer has the authority to request elaboration before ruling on an objection, and the party objecting risks waiving his objection if he fails to do so. However, the initiative is placed upon the party, not the judge or hearing officer, to raise a proper objection. *Lee*, 2004 ND 176, ¶ 10, 687 N.W.2d 237. A party must raise a specific objection to proffered evidence under N.D.R.Ev. 103(a)(1), and cannot rely upon the hearing officer to request further specification.

[¶ 31] We conclude May failed to timely raise a specific foundation objection to admission of the Intoxilyzer test results based upon the claim of facial irregularity, and thereby waived his objection to the proffered evidence. The hearing officer therefore did not abuse his discretion in admitting the Intoxilyzer test results.

B

[¶ 32] May contends the Intoxilyzer test results were improperly admitted because compliance with the State Toxicologist's approved method was not shown. Specifically, May contends the hearing officer erroneously admitted a copy of Form 120–I to establish compliance with the State Toxicologist's approved method for conducting the Intoxilyzer test. May objected to the Form 120–I at the hearing, arguing it constituted inadmissible hearsay.

[¶ 33] The Department introduced into evidence a Standard Solution Analytical Report, signed by the State Toxicologist, certifying the solution met the required concentration for a valid test. The Stan-

dard Solution Analytical Report further states: "Each bottle of solution may be used on up to 50 Intoxilyzer 5000 tests or forty-five (45) days, whichever comes first." The Department also introduced a copy of the Form 120–I for this particular vial of standard solution through the officer who conducted the Intoxilyzer test. Form 120–I is a ledger documenting each Intoxilyzer test which uses a particular numbered vial of standard solution, and includes the date it was put into use. This Form 120–I purportedly showed the standard solution used in May's Intoxilyzer test was less than 45 days old and had been used in fewer than 50 prior tests.

■ [¶ 34] At the time this case was briefed and argued, this Court had not addressed whether the 45–day, 50–test limitations were part of the State Toxicologist's approved method, so that compliance was a prerequisite to establishing fair administration of the test under N.D.C.C. § 39–20–07(5). We resolved this issue in *City of Bismarck v. Bosch,* 2005 ND 12, ¶¶ 9, 11, 691 N.W.2d 260, holding that the guidelines included in the Standard Solution Analytical Report are not part of the approved method, and proof of compliance with those guidelines is not a prerequisite to showing fair administration of the test or to admission of the test results. *See also Doll v. North Dakota Dep't of Transp.,* 2005 ND 62, ¶ 11, 693 N.W.2d 627. Accordingly, admission of Form 120–I was not necessary to show compliance with the State Toxicologist's approved method and was not a prerequisite for admissibility of the Intoxilyzer test results.

## C

[¶ 35] We conclude the hearing officer did not abuse his discretion in admitting into evidence the Intoxilyzer test results.

## V

[¶ 36] We have considered the remaining issues and arguments raised by the parties and find they are either without merit or are unnecessary to our decision. The judgment affirming the hearing officer's decision to suspend May's license is affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., and JAMES M. BEKKEN, Distinct Judge, concur.

[¶ 38] The Honorable JAMES M. BEKKEN, District Judge, sitting in place of KAPSNER, J., disqualified.

[¶ 39] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.